

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-2009

# Bravo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1034

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"Bravo v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1228.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1228

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IMG-040                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1034
_____

JOSE A. BRAVO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A97-837-926)
Immigration Judge: Honorable Henry S. Dogin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 18, 2009
Before:  MCKEE, NYGAARD AND ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed    June 5, 2009  )
_____

OPINION
_____

PER CURIAM

    Jose A. Bravo petitions for review of the Board of Immigration Appeals' ("BIA")

final order of removal.  For the following reasons, we will deny his petition.

Bravo, a native and citizen of Ecuador, entered the United States in 1993 on a visitor visa that authorized him to stay until May 5, 1994. Bravo overstayed, and the Department of Homeland Security served him with a notice to appear on December 20, 2005, charging him as removable on that basis. Bravo concedes removability, but seeks withholding of removal, relief under the Convention Against Torture ("CAT") and voluntary departure. (He originally filed an application for asylum as well, but withdrew it after conceding that the application was untimely.)

Bravo's claims are based on two assaults and robberies he suffered while in Ecuador and on his fear of criminal activity if he is returned. Before the Immigration Judge ("IJ"), Bravo testified that he worked as a bus driver in Ecuador and that, on two occasions, four armed men seized control of his bus, beat him, pointed a gun at his head, and robbed the passengers at gunpoint. (A.82-86.) Bravo does not know whether it was the same four men who held up the bus on both occasions. (A.84.) He reported the first incident to police, who arrested four suspects but released them two or three months later for reasons unknown to him. (A.84-85.) Bravo reported the second incident to police as well, but does not know what became of his report. (A.86.) He testified that the bus route he had been driving was "dangerous" because "[a]lways there are stick-ups and assaults." (A.89.) He also agreed, on questioning from the IJ, that the perpetrators were "criminals" and were "looking to rob the jewelry, the cash and the belongings of the

passengers." (A.90.) He testified that he obtained a visa to come to the United States because he was traumatized by these events, (A.86), and that he is afraid to return because "[t]he delinquency over there is worse than ever," (A.88), and the gunmen "can even kill me because the guys that stuck me up, I would probably recognize them," (A.89).

By oral decision rendered June 9, 2006, the IJ found Bravo credible, but denied his withholding claim because neither his past mistreatment nor his fear of future mistreatment was based on a statutorily-protected ground, including membership in a particular social group. The IJ also denied Bravo's CAT claim because he had presented no evidence that he would be tortured on return by the government or with governmental acquiescence. The IJ granted Bravo voluntary departure. The BIA dismissed Bravo's appeal by decision issued on December 7, 2007, essentially agreeing with the IJ's analysis. Bravo petitions for review.

## II.

We have jurisdiction to review Bravo's final order of removal under 8 U.S.C. § 1252(a)(1). Because the BIA provided its own analysis, we review the decision of the BIA. See Lukwago v. Ashcroft, 329 F.3d 157, 166 (3d Cir. 2003). We review the BIA's factual findings for substantial evidence and must treat them "as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. at 167. We review de novo the BIA's legal conclusion, including the propriety of the legal standards it employed, subject to established principles of deference on agency review. See Silva-

3

Rengifo v. Att'y Gen., 473 F.3d 58, 63 (3d Cir. 2007). Under these standards, there is no basis to disturb the BIA's ruling here.

First, with respect to withholding of removal, a petitioner must show that it is more likely than not that he or she will face persecution "on account of" a statutorily-protected ground—i.e., "'race, religion nationality, membership in a particular social group, or political opinion.'" Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 340, 348 (3d Cir. 2008) (quoting 8 U.S.C. § 1101(a)(42)(A)). In this case, the BIA properly concluded that criminal activity does not constitute persecution when it is not "motivated by a protected ground" and that Bravo "has not met his burden of showing that those who robbed him were motivated even in part by his membership in any particular social group." (BIA Dec. at 2.)

In his brief, Bravo argues that he is a member of a social group composed of "working males who are targeted, threatened, and may ultimately be killed by members of the criminal gang element." We are skeptical that this category constitutes a "particular social group" under the INA, see Lukwago, 329 F.3d at 172 (" a 'particular social group' must exist independently of the persecution"), but the BIA did not decide whether it does so we may not reach that issue in the first instance, see Valdiviezo-Galdamez v. Att'y Gen., 502 F.3d 285, 290 (3d Cir. 2007). See also Gomez-Zuluaga, 527 F.3d at 345 n.10 ("It is not necessary for us to determine whether this is a cognizable 'particular social group' under the statute, because there is substantial evidence in the record to conclude

4

that [the perpetrator] was not motivated by Petitioner's membership in a particular social group[.]").  Instead, the BIA concluded that Bravo had not shown that his attackers were or would be motivated by his membership in any particular social group.  That conclusion is supported by substantial evidence.  In particular, Bravo admitted that stick-ups were common along his bus route, that the assailants were criminals who wanted to rob his passengers, and that they robbed and assaulted his passengers as well as him.  Accordingly, there is no basis of record to conclude that Bravo was or likely will be targeted by criminal elements on account of his membership in a particular social group or on any other protected ground.

Second, with respect to Bravo's CAT claim, the BIA concluded that Bravo presented no evidence that he would be tortured "by or with the 'acquiescence' of the Government.'"  (BIA Dec. at 2.)  We agree.  Bravo appears to argue that the BIA applied the wrong legal standard by requiring him to show the Ecuadorian government's "actual knowledge" that he would be tortured, but the BIA quoted and properly applied our statement of the standard for "acquiescence" in Silva-Rengifo.  Bravo also argues that the BIA erred by failing to "fully consider" the evidence of record, which he claims shows that the Ecuadorian government lacks sufficient resources to protect its citizens from criminal violence.  Even if that circumstance were sufficient to constitute "acquiescence," however, there is no such evidence of record.  Bravo himself did not testify to that effect, and none of the other evidence of record suggests that the Ecuadorian government is

5

unwilling or unable to protect its citizens from crime or even mentions that issue. (A.96-128) (articles and country reports). To the contrary, as the BIA explained, Bravo testified that police arrested the perpetrators of the first robbery and otherwise presented "no evidence suggesting that the Ecuadorian government is turning a blind eye to criminal activity." (BIA Dec. at 2.)[1] That conclusion is supported by substantial evidence as well. Cf. Valdiviezo-Galdamez, 502 F.3d at 293 (remanding for determination of governmental "acquiescence" to torture where "the IJ failed to note that the police ignored five reports filed by [petitioner] concerning violence and threats by gang members").

Finally, Bravo agues with respect to both claims that the BIA improperly faulted him for a lack of corroboration and failed to specify what additional detail it expected. Neither the IJ nor the BIA, however, denied Bravo's claims for lack of corroboration or referred to lack of corroboration at all. Instead, both denied Bravo's claims because he simply failed to present any evidence—testimonial or otherwise—that he was or would be targeted on account of a protected ground or that the Ecuadorian government would torture or acquiesce in his torture if he is returned. Our review of the record confirms those conclusions.

Accordingly, we will deny Bravo's petition for review.

---

[1]Bravo argues in his brief that "[t]he Immigration Judge noted that it appears that the government of Ecuador does not have the necessary resources to combat the growing problem of the criminal gangs attacking the civilians of Ecuador." (Petr.'s Br. at 20.) As the Government notes, however, the IJ's decision contains no mention of this issue whatsoever, and neither does the transcript of Bravo's hearing.